UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-20990-CIV-ALTMAN

**BERNARD AUGUSME**,

*Plaintiff*,

v.

**WARDEN E.K. CARLTON**,

*Defendant*.

_____/

# ORDER

The Plaintiff, Bernard Augusme, is a federal prisoner who was, at one time, housed at the Federal Detention Center ("FDC") in Miami, Florida. In his *pro se* civil-rights complaint—filed pursuant to the private right of action created by the Supreme Court's decision in *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)—Augusme alleges that the Warden of FDC (our Defendant, Warden Eugene "E.K." Carlton) was deliberately indifferent to the injuries he sustained after another inmate assaulted him. *See* Amended Complaint [ECF No. 12] at 13. Warden Carlton has filed a Motion to Dismiss the Amended Complaint under FED. R. CIV. P. 12(b)(6), arguing that Augusme "failed to exhaust [his] administrative remedies" before filing suit. *See* Motion to Dismiss [ECF No. 19] at 1. After reviewing the Motion to Dismiss, we agree with Warden Carlton that Augusme failed to fully exhaust his administrative remedies and that the Amended Complaint should be **DISMISSED**.

## THE LAW

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Pleadings must

contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545).

On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Unsupported factual allegations and legal conclusions, however, receive no such deference. See *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). A complaint's "well-pled allegations must 'nudge the claims across the line from conceivable to plausible.'" *Hays v. Page Perry, LLC*, 627 F. App'x 892, 896 (11th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555, 570) (cleaned up).

## ANALYSIS

Augusme alleges that, on October 13, 2020, "another inmate assaulted [him]" while Augusme was making a phone call, knocking Augusme unconscious. Amended Complaint at 12. Augusme was taken to FDC's medical bay, where he was "provided ibuprofen and ice" and "informed that the next day—10/14/20, he would receive an x-ray." *Id.* at 13. On October 15, 2020, Augusme complained to Warden Carlton that "he was [in] pain and that no one had taken him to medical to perform the x-ray." *Ibid.* Warden Carlton allegedly told Augusme that "he was currently under investigation and

would have to wait till the investigation was over to receive treatment." *Ibid.* The next day, October 16, 2020, Augusme informed "Dr. Perez" that "the x-ray had not [been] performed; he was still in pain; and had not been able to sleep or eat for four days." *Id.* at 14. Hearing this, Dr. Perez had an x-ray performed on Augusme, which revealed that Augusme's jaw had been broken. *Ibid.* Augusme successfully underwent surgery to repair his broken jaw on October 19, 2020. *Ibid.* We previously found that these allegations stated a plausible *prima-facie* claim of deliberate indifference to a serious medical need against Warden Carlton. *See* Screening Order [ECF No. 15] at 7 ("Specifically, [Augusme has] alleged that he suffered a head injury and a broken jaw, that he told the Warden about these injuries, and that the Warden apparently refused him the medical attention he needed because (the Warden said) Augusme was 'under investigation.'").

The Motion to Dismiss doesn't contest any of Augusme's factual allegations. Nor does it second-guess any of the preliminary findings we made in our Screening Order. Instead, Warden Carlton asks us to dismiss the Amended Complaint under the Prison Litigation Reform Act's ("PLRA") requirement that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). And (Warden Carlton says) Augusme failed to exhaust his administrative remedies in two ways. *First*, when Augusme initiated his BOP grievance process, he only complained that the "medical staff did not treat his injury in a timely manner" and didn't "mention Warden Carlton or allege any claim against him." Motion to Dismiss at 8. *Second*, even if Augusme had properly raised claims against the Warden at the outset of the grievance process, he still "failed entirely to exhaust his administration [sic] remedies" because, after his grievance was denied, he failed to timely "file an appeal to the [BOP's] General Counsel[.]" *Id.* at 9. Augusme didn't file a response opposing or otherwise objecting to the Motion to Dismiss—which gives us grounds to grant the Motion by default. *See* S.D. FLA. L.R. 7.1(c)(1) ("[E]ach party opposing a motion shall file and

serve an opposing memorandum of law no later than fourteen (14) days after service of the motion. Failure to do so may be deemed sufficient cause for granting the motion by default.").

The PLRA requires that, before he can file a § 1983 suit in federal court, a federal prisoner must exhaust his claims through his prison facility's administrative-grievance system. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002))). If a prison system "provides a grievance procedure for its prisoners," then the "inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure[.]" *Varner v. Shepard*, 11 F.4th 1252, 1257 (11th Cir. 2021) (quoting *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005)). The exhaustion requirement is absolute and inflexible. Indeed, a prisoner must still "exhaust administrative remedies even where the relief sought . . . cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). While an inmate is not required to "name any particular defendant in a grievance in order to properly exhaust his claim," he must provide sufficient details about the incident to "alert[ ] prison officials to the problem and giv[e] them the opportunity to resolve it before being sued." *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218–19 (11th Cir. 2010) (citing *Jones*, 549 U.S. at 219).

"Because exhaustion of administrative remedies is a matter of abatement and not generally an adjudication on the merits," issues of exhaustion "should be decided [in] a Rule 12(b) motion to dismiss[.]" *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008). The Eleventh Circuit uses a two-step test to determine whether a prisoner has successfully exhausted his administrative remedies. "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). If the plaintiff's version of the facts indicates that he failed to exhaust his administrative remedies, then "the complaint [must be] dismissed[.]" *Ibid.* Second,

4

if the prisoner passes the first step, the burden shifts to the defendant to prove, with competent evidence, "that the plaintiff has failed to exhaust his administrative remedies[.]" *Ibid.* At that point, we must "make specific findings in order to resolve the disputed factual issues related to exhaustion" and, based on those factual findings, determine whether the prisoner has exhausted all available remedies. *Id.* at 1082–83.

As a prisoner in the custody of the BOP, Augusme was required to follow the BOP's "established regulations governing formal review of inmate complaints," otherwise known as the "Administrative Remedy Program." *Keys v. U.S. Dep't of Justice*, 136 F. App'x 313, 314 (11th Cir. 2005) (citing 28 C.F.R. §§ 542.10–.19). The Administrative Remedy Program is a "three-tiered process" that requires an inmate to complete the following steps: (1) file a "formal written complaint" with the warden of the facility "within fifteen days of the date on which the basis for the grievance occurred"; (2) appeal "within twenty days of the [warden's] response to the regional director"; and (3) appeal the regional director's response to the BOP's general counsel within thirty days. *Irwin v. Hawk*, 40 F.3d 347, 349 n.2 (11th Cir. 1994); *see also* 28 C.F.R. §§ 542.13–.15 (establishing these three tiers of administrative review).[1] If an inmate fails to timely appeal his grievance to all three tiers of the Administrative Remedy Program, then he has failed to exhaust his administrative remedies under the PLRA. *See Irwin*, 40 F.3d at 349 n.2 ("An inmate has not fully exhausted his administrative remedies until he has appealed through all three levels."); *Bryant*, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process." (cleaned up)).

---

[1] All reviewing officials in the Administrative Remedy Program must respond to an inmate's grievance within a set period of time. If an inmate "does not receive a response within the time allotted for reply," then he must "consider the absence of a response to be a denial at that level" and continue to appeal his grievance to the next-level authority. 28 C.F.R. § 542.18.

In his Amended Complaint, Augusme claims that he filed grievances with "the institution" and that he "appealed to both regional and national offices." Amended Complaint at 7. But he also admits that (at the time he filed his Amended Complaint) "the national appeal has not made a decision." *Ibid.*

To clarify Augusme's grievance history, Warden Carlton attached to his Motion to Dismiss all of Augusme's grievances, along with the BOP's responses.[2] Here's what these documents reveal about Augusme's grievance history:

- On January 5, 2021, Augusme filed a "Request for Administrative Remedy" with Warden Carlton. *See* Request for Administrative Remedy [ECF No. 19-2] at 1. There, Augusme asserted that, on October 13, 2020, he "told the Nurse and Lieutenant that my jaw bone is broke[n,]" and that an x-ray was scheduled for October 14, 2020. *Ibid.* Augusme's grievance further stated that "[n]o X-ray was taking [sic] until Oct. 16th! I was in pain and suffering, I couldn't eat or sleep! The Medical Department did not come to treat my injurie [sic] in [a] timely manner." *Ibid.*

- Warden Carlton responded on January 14, 2021. *See* Warden Carlton Response [ECF No. 19-3] at 1. He explained that Augusme initially "denied any symptoms" on October 13, 2020; that an x-ray was taken on October 16, 2020; and that, after receiving the results of the x-ray, Augusme was "immediately sent to the local hospital where you were seen by a surgeon and received surgery to correct the fracture." *Ibid.* Having determined that the facility's medical

---

[2] Warden Carlton says that we can consider these exhibits because "they are referred to in the complaint and are central to the plaintiff's claim." Motion to Dismiss at 5 n.2 (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368–69 (11th Cir. 1997)). We agree. Augusme plainly referred to these grievance forms in his Amended Complaint. *See, e.g.*, Amended Complaint at 7 ("I filed the BP-8, BP-9, BP-10, and BP-11 [grievance forms]"). And that's because they're plainly central to his claim, and their authenticity is not in dispute. *Cf. Bryant*, 530 F.3d at 1377 ("Where exhaustion—like jurisdiction, venue, and service of process—is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes[.]"); *Gross v. White*, 340 F. App'x 527, 533–34 (11th Cir. 2009) ("Even documents submitted by a defendant with a motion to dismiss, rather than by the plaintiff with the complaint, may be considered by the court if the plaintiff refers to those documents in the complaint and those documents are central to the plaintiff's claim. . . . Gross' second amended complaint specifically referred [to] those grievance forms, which were central to his claims." (cleaned up)); *White v. Berger*, 709 F. App'x 532, 541 n.4 (11th Cir. 2017) ("When ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings."). We also note that Augusme had the opportunity to object to Warden Carlton's reliance on these exhibits by filing a Response to the Motion to Dismiss, but he chose not to. *See* S.D. FLA. L.R. 7.1(c)(1).

staff acted in a timely manner, Warden Carlton denied the grievance and authorized Augusme to appeal his decision to the Regional Director's Office in Atlanta, Georgia. *See ibid.*

- Augusme appealed to the Regional Director on January 17, 2021. *See* Regional Director Appeal [ECF No. 19-4] at 1. In that appeal, Augusme repeated the same allegations he'd advanced in his original grievance to Warden Carlton. *See ibid.* ("The Medical Department did not come treat my injurie [sic] in [a] timely manner."). On March 1, 2021, the Regional Director denied the appeal. *See* Regional Director Response [ECF No. 19-5] at 1.

- On April 4, 2022, Augusme attempted to appeal the Regional Director's decision to the BOP's General Counsel. *See* Grievance History [ECF No. 19-1] at 2. But this appeal was rejected on April 14, 2022, because Augusme had filed it with the General Counsel "392 days" after receiving the Regional Director's response. *Ibid.* According to Warden Carlton, we have no record of what Augusme alleged in his appeal to the General Counsel "because it was rejected and returned to Plaintiff, as per procedure, for the inmate to provide the reason for untimeliness if he wished reconsideration." Motion to Dismiss at 9; *see also* 28 C.F.R. § 542.17(b) ("When a submission is rejected, the inmate shall be provided written notice . . . explaining the reason for rejection. If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time within which to correct the defect and resubmit the Request or Appeal."). The BOP's records indicate that Augusme never attempted to remediate the deficiencies in his appeal. *See generally* Grievance History [ECF No. 19-1] at 1–2.

Based on our independent review of Augusme's grievance history—and for two reasons—we agree with Warden Carlton that Augusme failed to exhaust his administrative remedies. *First*, Augusme never successfully appealed the Regional Director's denial of his appeal to the BOP's General Counsel. The BOP's regulations are clear that "[a]n inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). The Regional Director's Response was dated March 1, 2021, *see* Regional Director Appeal [ECF No. 19-4] at 1, but Augusme waited until April 4, 2022 (or 392 days later) to file his appeal with the General Counsel, *see* Grievance History [ECF No. 19-1] at 2.[3] Augusme's failure to *timely* appeal the denial of

---

[3] In his Amended Complaint, which is dated November 2, 2021, Augusme claimed that his appeal to the General Counsel was still pending. *See* Amended Complaint at 7 ("[T]he national appeal has not made a decision."). This allegation conflicts with the Motion to Dismiss, which asserts that an appeal wasn't filed with the General Counsel until April 4, 2022. Motion to Dismiss at 9. *Turner* requires us to "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*,

7

his grievance to the next available prison official means that he's failed to exhaust his administrative remedies. *See Irwin*, 40 F.3d at 349 n.2 ("An inmate has not fully exhausted his administrative remedies until he has appealed through all three levels."); *Watkins v. Haynes*, 445 F. App'x 181, 184 (11th Cir. 2011) (holding that Watkins failed to exhaust his administrative remedies because he "did not file his national appeal until June 24, 2009, more than one year after the filing deadline in [28 C.F.R.] § 542.15(a)."); *Richmond v. McKittrick*, 2019 WL 4242473, at *4 (S.D. Fla. June 3, 2019) (Reid, Mag. J.) ("Plaintiff does not dispute Dr. McKittrick's contention that his second-level appeal was untimely. This untimely appeal failed to exhaust administrative remedies."), *report and recommendation adopted*, 2019 WL 4242475 (S.D. Fla. June 25, 2019) (Ungaro, J.).

*Second*, even if Augusme had properly followed the BOP's grievance procedures, he never exhausted his remedies against *Warden Carlton specifically*. When Augusme initiated the grievance process, his only complaint was that the "Medical Department" had failed to treat his broken jaw in a timely manner because it took his x-ray on October 16, 2020, rather than October 14, 2020. *See* Request for Administrative Remedy [ECF No. 19-2] at 1. Nowhere in his original grievance, though, did Augusme mention Warden Carlton, blame the delayed treatment on the Warden, or claim that Carlton had ordered the prison's medical staff *not* to treat Augusme while the latter "was [ ] under investigation." Amended Complaint at 13. And these latter allegations, of course, now form the

---

541 F.3d at 1082. We'll credit Warden Carlton's timeline of events over Augusme's for two reasons. *One*, the BOP's own records show that no appeal was pending before the General Counsel until April 4, 2022. *See* Grievance History [ECF No. 19-1] at 1–2. *Two*, if Augusme mistakenly believed that he had previously filed a timely appeal with the General Counsel, BOP regulations would have allowed him to rectify this mistake once the General Counsel rejected his appeal as untimely on April 14, 2022. *See* 28 C.F.R. § 542.14(b) ("Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed."); § 542.17(c) ("When a Request or Appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection[.]"). Since Augusme never tried to resuscitate his untimely appeal to the General Counsel—and because he never attempted to remedy the timeliness deficiency the General Counsel identified for him—we agree with Warden Carlton that Augusme never completed the final step of the Administrative Remedy Program.

gravamen of Augusme's lawsuit against Warden Carlton. *Compare* Request for Administrative Remedy [ECF No. 19-2] at 1 ("The Medical Department did not come treat my injurie [sic] in a timely manner."), *with* Amended Complaint at 13 ("The Warden informed Plaintiff that he was currently under investigation and would have to wait till the investigation was over to receive treatment."). We thus cannot say that Augusme's grievance properly alerted prison officials to *Warden Carlton's* alleged deliberate indifference. *See Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) ("[T]he purpose of administrative exhaustion . . . is to put the administrative authority on notice of all issues in contention and to allow the authority an opportunity to investigate those issues." (cleaned up)); *Pearson v. Taylor*, 665 F. App'x 858, 867 (11th Cir. 2016) ("In that grievance, Pearson did not mention Orr, Philbin, or Taylor, nor did he include any complaint about a denial of medical care or any injuries he suffered from Weston's use of pepper spray. As a result, the grievance would not have alerted prison officials to the problem and given them an opportunity to resolve it before being sued."); *Ham v. Salmon*, 2022 WL 1555080, at *8 (S.D. Fla. May 17, 2022) (Ruiz, J.) (finding that a prisoner failed to exhaust his administrative remedies against some of the defendants because he failed "to present some factual allegations [in his grievance] which would allow a prison official to conclude that a person other than Sgt. Salmon had engaged in improper behavior" (emphasis omitted)).

Augusme, in short, failed to exhaust his administrative remedies against Warden Carlton, and his complaint must be dismissed. *See* 42 U.S.C. § 1997e(a); *Bryant*, 530 F.3d at 1372–73 ("[W]hen a state provides a grievance procedure for its prisoners, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit. We have no discretion to waive this exhaustion requirement.").

\* \* \*

After careful review, therefore, we hereby **ORDER AND ADJUDGE** that Warden Carlton's Motion to Dismiss [ECF No. 19] is **GRANTED**. The Plaintiff's Amended Complaint [ECF No. 12]

9

is **DISMISSED**. All deadlines are **TERMINATED**, and all other pending motions are **DENIED as moot**. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida this 17th day of October 2022.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record
      Bernard Augusme, *pro se*